[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ORDER RE PENDING MOTIONS
The marriage of the plaintiff and defendant was dissolved by the court, the Honorable Alexandra D. DiPentima, on June 1, 1999. The judgment incorporated the terms of a Separation Agreement separately signed and dated by the parties that same day. Under the terms of the judgment, the court awarded custody of the three minor children to the plaintiff and ordered the defendant to pay child support in the amount $800 per month. On September 23, 1999, the defendant filed the motion pending before the court here to modify the child support order. Since then, the plaintiff has filed an objection to that motion; a motion for counsel fees post-judgment for defense against the defendant's motion; a motion for post-judgment order that defendant pay her travel expenses in connection with responding to that motion; and a motion to compel the defendant to continue maintaining medical coverage as provided in the judgment of dissolution. For the reasons stated below, the court denies the defendant's motion to modify the child support order and grants the plaintiff's motions for counsel and travel fees.
Child support orders are governed by various statutory criteria in conjunction with the child support and arrearage guidelines, Regs., Conn. State Agencies, § 46b-215a-1 et seq (hereafter, the "guidelines"). Section 46b-215b(b) of the General Statutes establishes a "rebuttable presumption" that the amount of child support determined under the guidelines is the amount of support the court should order. General Statutes § 46b-215b(a) provides that the court must also consider the guidelines "in addition to and not in lieu of" other statutory factors.[1]
Part I of this decision analyzes the pending child support issue with reference to the guidelines. Part II discusses equitable and other factors that provide a separate basis for the court's decision. Part III addresses the other pending motions.
 I
Under General Statutes § 46b-84, the court may modify a child support order "upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, CT Page 125 unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate."
The defendant's motion to modify the amount of child support claims that a "significant change in circumstances" has resulted in "a significant reduction in his earnings requiring a modification of the current child support and order concerning the payment of the plaintiff's automobile loan." At the hearing on this motion, he testified that because of a sixty percent service-related disability, he could no longer continue his previous employment as a bodyguard and was now attending college to become a secondary school teacher.
There is no dispute between the parties here that the $800 per month of child support agreed to by the parties in their Separation Agreement and ordered by the court at the time of the dissolution deviated from the presumptive amount then called for under the guidelines. When approving this amount, the court expressly noted that the deviation was justified under § 46b-215a-3b(3)(A) due to "significant visitation expenses and other equitable factors." Without that deviation, the child support order would have been $1,204 per month. The parties agree that, with the plaintiff relocating with her children to Tennessee, the cost for the defendant to visit his children regularly was one of the factors justifying this thirty-four percent deviation from the amount required under the guidelines. They do not agree, however, as to what the "other equitable factors" referred to by the court's judgment were. The defendant testified that the other equitable factor was his agreement to pay plaintiff's automobile loan; but the plaintiff testified that the other equitable factor was the defendant's agreement to pay child support to her during those summer months when the children would be with him. In view of this disagreement as to the equitable factors applied by the court in June, and exercising its own responsibility to determine the correct amount of child support under the revised guidelines, this court will make an independent determination of what equitable factors, if any, to apply in determining the child support award now.
The evidence is clear and unconverted that the defendant suffers from a service-related disability, and the court accepts the testimony and documentary evidence offered by the defendant that it is a significant disability interfering with his ability to perform his previous work responsibilities as a bodyguard. The CT Page 126 plaintiff herself testified that she had been aware of his medical problems and the difficulties they had caused him in his job. The plaintiff has also offered satisfactory evidence establishing that his present income is no longer the $1,267 he earned per week in June but is now $401 per week (in combined payments by the Veteran's Administration of a disability check and for basic living expenses while he pursues his vocational rehabilitation program). Based on the child support guidelines and current parental income, a Child Support Guidelines Worksheet completed November 15, 1999, shows that the presumptive child support amount for the defendant, absent application of any deviation criteria, would be $163.20 per week. He now seeks the same thirty-four percent reduction from this amount as previously allowed by the court, to a weekly child support order of $108 per week.
The plaintiff, on the other hand, urges the court to maintain the present child support award. While not disputing the reduction in the defendant's income and acknowledging the income-based approach of the guidelines, she argues that an upwards deviation from the presumptive child support amount calculated under the guidelines is appropriate under § 46b-215a-3(b)(1)(D), which provides that "[o]ther financial resources available to a parent" may be a criterion for deviating from the presumptive amount.[2]
The evidence established here that although the defendant's income may have dropped since June, none of his expenses have done so. In fact, his weekly expenses have increased by $235 a week, from $1,230 per week to $1,435 per week. The testimony at the hearing also established that since June the defendant has increased his weekly automobile expenses by leasing a more expensive motor vehicle than before, made a $3,000 down payment on the lease of that vehicle, and purchased almost four thousand dollars worth of new furniture.[3] Thus, his income is a thousand dollars less each week than his expenses.
While the defendant's expenses have increased and his income decreased, he has neither used his existing assets nor incurred new debt to cover the thousand dollar weekly gap between his income and his expenses. On both his June 1, 1999, and November 15, 1999, financial affidavits, he lists the same $5,000 as his total liabilities. Rather than invading his assets to cover his increased expenses, the defendant has managed to increase the value of his assets by adding $2,000 to his pension. Obviously, CT Page 127 if the defendant's expenses are far greater than his income, but his debts have not increased, and he has not used his assets, the defendant is getting money to meet his increased living expenses from somewhere else. In fact, the defendant's current wife testified at the hearing that she is bridging the gap between the defendant's income and expenses. She testified that, when the defendant left his previous employment, they realized that they would have a temporary shortfall because his income would be less while he was in school but that "we put everything together" and pay their bills together from their joint income, including his child support obligation, and will continue to do so. The evidence before the court thus shows, despite the defendant's reduced income, no significant change in his circumstances. The evidence of reduced income is more than offset by the evidence that the defendant increased his expenses, made significant outlays for new furniture and a new vehicle, added to his assets, shares income and expenses with and receives regularly recurring contributions from his new wife, and incurred no new indebtedness.
The court finds that the defendant reduced his income not just because of his disability, but also as a direct result of his ability to count on regularly recurring contributions from his new spouse to meet his living expenses. The court therefore finds an upwards deviation from the presumptive child support amount justified under § 46b-215a-3(b)(1)(D) of the guidelines.
The court finds further that plaintiff's request to maintain the current child support amount is fair and reasonable under all the circumstances. Although the defendant is able to afford even more expenses now than last June, the court accepts the plaintiff's request to set the upwardly-deviated child support amount at the level previously set of $800 per month. This amount also takes into consideration the fact that the defendant will make at least five annual trips to and from Tennessee for visiting his children, and that the total cost of these trips may well reach $3,000 a year for him. It further takes into consideration that the defendant is required to pay the child support even in summer months or other periods when the children will spend significant time visiting him. Finally, the court takes into consideration, in setting the child support amount, that $800 is the amount previously agreed to by the parties in their Separation Agreement. Without consideration of these three factors, the amount of the child support award would be greater. CT Page 128
 II
In addition to finding that the guidelines specifically authorize an upwards deviation because of regularly recurring contributions from the defendant's wife, the court sets the child support amount at $800 based on separate and independent "equitable factors," as permitted under § 46b-215a-3(b)(6)(C):
 In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Following are such circumstances: . . . (C) Other equitable factors.
The court finds, as is necessary under § 46b-215b(a),[4]
that it would not be fair or equitable to allow the defendant to increase his living expenses and reduce his income in reliance on support from his new wife, and then allow him to reduce his child support obligation as a way of helping cut the gap between his reduced income and his increased expenses.
The parties in this case entered into the Separation Agreement on June 1, 1999. The numerous terms and conditions of the separation agreement show that the parties negotiated seriously regarding it. Both parties were represented by counsel when they entered into their agreement covering custody, visitation, alimony, allocation of real and personal property and marital debts, in addition to the issue of child support. The plaintiff waived any right to alimony, any claim to a portion of the defendant's accumulated pension, and any interest in the marital home. Alimony, the pension, and equity in the marital home could all have provided a source of funds to help the plaintiff meet her financial responsibilities to her children. Part of her motive for and interest in doing so, when she would be, under the settlement agreement, the primary custodial parent was, undoubtedly, the knowledge that the Separation Agreement specifically required the defendant to pay $800 a week in child support. Even though less than the presumptive child support amount, this was still a significant sum of money to receive each week from the defendant. Within weeks of plaintiff's irrevocable waiver of alimony and unmodifiable waiver of claims to the pension and marital home, the defendant sought to modify the one financial term of the Separation Agreement over which the court had continuing jurisdiction — the amount of the child support order. CT Page 129
As our appellate courts have many times noted, "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) Sunbury v. Sunbury,210 Conn. 170, 175, 553 A.2d 612 (1989). The child support order here is part of such a mosaic, and the court has especial reluctance to alter it on these circumstances, particularly so soon after the judgment. Whether it is a mere matter of coincidence that the financial terms beneficial to the defendant are, under the settlement agreement, non-modifiable, but those beneficial to plaintiff are subject to change, the court, hearing this as a court of equity; Bratz v. Bratz, 4 Conn. App. 504, 507,495 A.2d 292 (1985); Warner v. Konover, 210 Conn. 150, 1155-156,553 A.2d 1138 (1989; Pasquariello v. Pasquariello, 168 Conn. 579,585, 362 A.2d 835 (1975); holds that it would be unfair and inequitable to allow defendant to modify the negotiated child support agreement so soon after the separation agreement under the many circumstances stated in this opinion.
By the present motion before this court, the defendant seeks relief from the financial burden he assumed at the dissolution, while the non-modifiabilty of the property and alimony settlement shields the financial benefits he attained from any similar claim for modification by the plaintiff. It would be inequitable and inappropriate to allow him to go back on the primary financial obligation he assumed under that agreement while continuing to reap all the financial benefits accruing to him from that agreement.
Section 46b-215b(b) of the General Statutes provides that "the child support guidelines shall be considered in addition to and not in lieu" of other statutory factors. Among those factors are the mandate of § 46b-86(a) that "[i]n determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division." Similarly, § 46b-215a-3(b)(5)[5]
of the guidelines permits the court to consider the dissolution property settlement as a deviation criterion in planning the coordination of total family support.[6] This court will not fracture the ""carefully crafted mosaic" that resulted in the dissolution order six months ago. CT Page 130
The court thus denies the motion to modify the child support award.
 III
Furthermore, the court denies the defendant's request to modify the order that he pay the plaintiff's car loan. Despite the defendant's characterization of the car loan repayment as one of the equitable factors justifying the downward adjustment of the child support order in June, the car loan payment is in the nature of a property settlement that the court cannot and will not modify. Perhaps the car loan payment was consideration motivating plaintiff to agree to the downward deviation, but that does not subject such an order to modification any more than the order for no alimony or the other property divisions would be modifiable.
The plaintiff has requested travel and counsel fees in connection with the defense of this motion.[7] The Separation Agreement provides that the court may award counsel fees in connection with a breach of the agreement, but the pending motions do not present a breach, only a request for modification. Under General Statutes § 46b-62,[8] however, this court retains authority to award counsel fees in these matters to enforce or modify the judgment of dissolution, by applying the factors set forth in § 46b-82.[9] Reviewing the statutory factors and the facts here, and especially considering the defendant's substantially better financial capacity than the plaintiff, in particular the greater assets of defendant (which were derived from the marital estate), the court believes it appropriate to grant an award of counsel fees. The court also believes it appropriate to award travel fees against the party which has unsuccessfully sought, so soon after the dissolution judgment, to modify that judgment. See Benson v. Benson,5 Conn. App. 95, 100, 497 A.2d 64 (1985), Donoghue v. Donoghue, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. FA84-0217757 (Apr. 30, 1991), 1991 Ct. Sup. 3601, 3602 (Bassick,J.). The court finds the travel and counsel fees to be reasonable and appropriate under the circumstances to defend against the defendant's motion. Accordingly, the court grants plaintiff's post-judgment motions for payment of counsel and travel fees and orders the defendant to pay counsel fees of $600 and travel expenses of $798 on or before the first of February, 2000.
As for plaintiff's motion to compel defendant to ensure medical CT Page 131 insurance coverage for the minor children, the court understands from the testimony at the hearings on these matters that the parties have resolved that question. If not, plaintiff may reclaim that motion.
SO ORDERED.
BY THE COURT
Stephen F. Frazzini, Judge of the Superior Court